**(99 South. 865)**

**No. 24146.**

## CHARBONNET v. STATE REALTY CO., Limited.

(Dec. 10, 1923. Rehearing Denied by Division A April 21, 1924.)

*(Syllabus by Editorial Staff.)*

1. Action ⬩62—Suit to set aside tax deed not premature because previous suit for same object abandoned without paying costs.

Under Code Prac. art. 492, providing that after discontinuance plaintiff may bring suit anew, if he has paid costs, and article 536, providing that nonsuit may be entered when plaintiff fails to appear, but that such judgment cannot be pleaded as res judicata if costs have been paid, a suit to have a tax title decreed a nullity was not premature because plaintiff had failed to pay costs in another suit between the same parties which had been abandoned under Act No. 107 of 1898.

2. Judgment ⬩570(12)—Decree sustaining plea of abandonment held not res judicata.

A decree sustaining a plea in abandonment, in conformity with Civ. Code, art. 3519, as amended by Act No. 107 of 1898, but not deciding any controversy between the parties, was not available as estoppel or res judicata in a subsequent suit.

**3. Appeal and error ⬤⟿183—After trial on appeal on theory that slander of title was involved, defendant could not urge that suit was improper to try title.**

Where a suit was tried as one in jactitation in which slander was admitted, and in which validity of defendant's title was submitted for decision, defendant, on appeal by plaintiff praying for affirmance of the judgment, which recognized defendant's title, was not in a position to urge that plaintiff's suit was not the proper proceeding to try defendant's title.

**4. Constitutional law ⬤⟿315—Taxation ⬤⟿805(4)—Attack on tax title not prescribed, where tax debtor's possession uninterrupted.**

Where plaintiff in a suit to annul defendant's tax title had always remained in possession through himself and his authors, and paid taxes, the tax title was not protected by prescription, since to so hold would be a taking of property without due process.

**5. Taxation ⬤⟿805(3)—Prescription not operative in tax title holder's favor, where tax sale invalid.**

Where, in a suit to annul a tax title, there was a dual assessment of the property claimed by defendant, and a prior payment of taxes thereon, which, under Const. 1898, art. 233, struck the tax collector's sale with nullity, prescriptions under such article could not operate in defendant's favor.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Francis D. Charbonnet against the State Realty Company, Limited. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Charles Louque and L. A. Ducros, both of New Orleans, for appellant.

F. Rivers Richardson and Charles I. Denechaud, both of New Orleans, for appellee.

By Division B, composed of DAWKINS, LAND, and LECHE, JJ.

LECHE, J. Plaintiff alleges in substance that he is the owner and possessor of a tract of land measuring 136 feet 10 inches front on Claiborne street, in the city of New Orleans, between Egania and Lizardi streets by a depth between parallel lines of 9,069 feet; that the defendant has recorded what purports to be a deed, from the auditor of this state, of 15 squares of ground claimed to be a part of plaintiff's above-described property, and alleged to have been adjudicated to the state on May 27, 1889, for delinquent taxes of 1888 assessed in the name of Michel Florane, and described as "15 squares of ground, etc., Nos. 1630 and others, in the Third district of the city of New Orleans, bounded by Lizardi, Gamory, Florida Walk to Pelopidas street, measuring 110 feet front by 5,461 feet in depth; that said adjudication to the state upon which defendant's alleged title rests, is an absolute nullity, for the reasons: (1) That said assessment was made in the name of Michel Florane, who had died in the year 1870; (2) that no notice of delinquency was given; and (3) that the description is radically defective.

Plaintiff further alleged that, when he bought said property on December 5, 1902, he procured clear tax and other certificates, showing no delinquent taxes due on said property and no alienation to the state, and that he has paid all taxes legally assessed against said property since his acquisition thereof, and has always enjoyed full and uninterrupted possession of the same. Wherefore he prays that the deed from the auditor to defendant be decreed a nullity, and the registry thereof be declared as not bearing on or affecting his property herein first above described.

Defendant filed several exceptions to plaintiff's suit, averring that said exceptions were pleaded in the alternative, each being urged only in case the preceding one should be overruled: (1) That plaintiff's suit was premature, for the reason that plaintiff had failed to pay costs in another suit between the same parties, No. 85779 of the docket of the civil district court; (2) it further excepted that, "before respondent can be required to further plead to the demand of plaintiff,

it demands oyer of all titles relied upon by him"; (3) that plaintiff's demand is barred by the prescription of three years of article 233 of the Constitution of 1898, and of Act 105 of 1874, and by the prescription of five years of article 3543, C. C; (4) that the plaintiff is estopped from averring the nullity of its title by his abandonment of the suit No. 85779 of the docket of the civil district court; (5) that his petition shows no cause of action against respondent; and (6) that the judgment in said suit No. 85779 has become final, and constitutes res adjudicata as to the matters and things here involved.

It seems that the suit No. 85779 of the docket of the civil district court was founded on the same cause of action as the present one, was filed April 13, 1908, and the plaintiff therein, who is plaintiff in the present suit, prayed that the State Realty Company, defendant in the present suit, be condemned to pay petitioner $2,500 damages for slander of title, and prayed further that the auditor's deed of March 22, 1907, to defendant be cancelled. On May 4, 1908, plaintiff discontinued any portion of his demand which prays for the nullity of the tax sale, but it appears, nevertheless, that on March 18, 1910, a judgment was rendered by the trial judge annulling the deed by the auditor in favor of defendant, and it also appears that said judgment erroneously describes all of plaintiff's land as being included in that deed, and that said judgment is silent as to plaintiff's claim in damages. Defendant then took an appeal to the Court of Appeal, and a judgment was rendered by that court, November 7, 1910, reversing that rendered by the district court on March 18, 1910, and remanding the case for trial de novo. The case was again lodged in the district court, and remained in abeyance until March 8, 1916, when, at the request of defendant, it was adjudged to have been abandoned under the provisions of Act 107, p. 155, of 1898. It

is upon this suit and the judgment of March 8, 1916, decreeing its abandonment by plaintiff, that defendant bases its exceptions of nonpayment of costs, estoppel, and res adjudicata.

Defendant's prayer for oyer has evidently been complied with, for it is not alluded to in brief or argued in this court, and the exception of no cause of action has virtually also been abandoned. Defendant's other exception based upon prescription will be adverted to at the proper time, on the merits of the demand.

After considering defendant's exceptions which have been invoked in this court by an answer to the appeal and argued in the order presented by the pleadings, we are of the opinion that neither of them is sustainable in law under the jurisprudence of this state.

[1] (1) Article 492, C. P., provides that, "after discontinuing the suit, the plaintiff may bring the action anew; provided he has paid the cost of the first suit," and article 536 provides that a judgment of nonsuit may be entered, if the defendant so requires, when a cause has been set down for trial, and the plaintiff fails to appear either in person or by attorney, and it further provides, "but such judgment cannot be pleaded, as res judicata, or in bar of another suit, for the same cause of action, provided the plaintiff show that he has paid the costs of the first suit."

It is clear from the language of these two provisions of the Code that the first has no application here, for the reason that the plaintiff has never discontinued the suit, though he did discontinue "any portion of his demand which prays for the nullity of the tax sale," and that neither can the secondly cited provision apply, as it is not pretended that plaintiff has failed to appear in person or by attorney after the cause had been set down for trial, and a judgment of nonsuit

rendered by reason of such failure to appear. It was held in Howard v. Copley, 10 La. Ann. 504, that, where a suit is neither discontinued by plaintiff or suffered to go by default, the articles 492 and 536 of the Code of Practice have no application. These two articles of the Code were not designed to enable clerks, sheriffs, or other subordinate officials of the court to collect their fees, but their purpose, considering their position under chapter 5 of the Code of Practice, which treats of trial and judgment, is to penalize a plaintiff guilty of laches, and therefore must be strictly construed and not extended by implication.

[2] (2, 3) Defendant's two other exceptions of estoppel and res adjudicata rest upon the same ground; that is, upon the judgment of the district court of March 8, 1916, decreeing that, according to the provisions of Act 107, p. 155, of 1898, plaintiff has abandoned his suit.

The cited act of the Legislature is an amendment to article 3519 of the Civil Code, which is found under section 5 of chapter 3, title 23, of that Code, treating of the causes which interrupt prescription. The amended article, when read in connection with the subject-matter of the section and of the article 3518 immediately preceding it, clearly means that a suit which has been abandoned for nonaction during a period of five years does not constitute a legal interruption to the course of prescription, and its effect is to leave a plaintiff in the same position that he would occupy if he had not instituted the suit.

In the case of Laenger v. Laenger, 138 La. 540, 70 South. 501, it was said, in commenting on the effect of article 3519, C. C., as amended, that a judgment dismissing a suit for having been discontinued or abandoned could not be the basis of a plea of res adjudicata. We have examined the following cases, in which the cited article of the Code, as amended in 1898, has been passed upon, viz.:

Lips v. Royal Ins. Co., 149 La. 359, 89 South. 213; Reagan v. Louisiana Western R. Co., 143 La. 754, 79 South. 328; Barton v. Burbank, 138 La. 997, 71 South. 134; Teutonia Loan & Bldg. Co. v. Connolly, 133 La. 401, 63 South. 63; City of New Orleans v. Jockey Club, 129 La. 64, 55 South. 711; Howcott v. Petit, 130 La. 791, 58 South. 574; and Lockhart v. Lockhart, 113 La. 872, 37 South. 860, and we find nothing in any of these decisions conflicting with what was said in the Laenger Case. A decree rendered in conformity with article 3519, sustaining a plea of abandonment, does not decide any controversy between the parties. It has no effect upon their legal rights or obligations, and serves only to leave them in the same position as if no such suit had been instituted.

[3] Defendant in its answer, after denying the various facts alleged by plaintiff as grounds to nullify and cancel the title upon which it relies, alleges in paragraph 14:

"And respondent, deeming that the suit of plaintiff is an action in slander of his alleged title, and to remove respondent's title as an incumbrance against same, stands ready to defend its title to the said property in any proper legal proceedings, but it shows that it cannot be called upon, against its will to defend its title in these proceedings."

Defendant then prays "that the demand of plaintiff be dismissed, and that, should the court determine that this is a suit in slander of title, then that it be ordered to file suit against respondent (should be that respondent be ordered to file suit against plaintiff) to try title within a period to be fixed by the court. And it further prays for all costs and for general relief."

It is difficult, owing to the meager information furnished by the record, to describe in detail the successive steps in the proceedings had in the district court in the presentation of this case. We find no ruling by the district judge on defendant's exceptions, though admittedly they were all overruled, and, al-

though defendant in the quoted language of paragraph 14 of its answer alleges that plaintiff's suit is not the proper proceeding to compel it to defend its title, the case was nevertheless tried without objection as a suit in jactitation, in which the slander is admitted, and in which the validity of defendant's title is submitted to the court for decision. The judgment of the district court, rendered on April 19, 1920, and from which plaintiff presently appeals, recognizes and maintains defendant's title, and in its answer to the appeal defendant prays for the affirmance of that judgment. Under these circumstances it would be useless to discuss the question raised by the quoted allegation of the answer, as defendant is no longer in a position to urge any such issue.

[4, 5] The action is one in slander of title, and as such is possessory in character. The claim of defendant is only to part of the property. Plaintiff's title is to a tract of land forming one body, extending from Claiborne street, upon which it measures 136 feet 10 inches front between Egania street and Lizardi street, and the prolongation of the lines of said streets, over 9,000 feet in depth. There is no question that plaintiff went into possession immediately after his acquisition in December 5, 1902, of the front part of the tract, and under our settled jurisprudence possession of that part was possession of the whole tract. Nor is there any question that plaintiff's authors in title were for the same reason also in actual possession of the property. Plaintiff's possession is therefore not only admitted by defendant's conduct in the trial of the case, but also by other proof in the record. The tract of land thus owned and possessed by plaintiff is crossed by what is known as Florida Walk or Florida Canal, and defendant's claim of title is only to a part of the tract situated in the rear of Florida Walk, measuring 110 feet in width, and extending 5,461 feet in depth to Pelopidas street. Defendant does not pretend to be in possession of the land which it purchased from the auditor, and the tax title under which it claims is not protected by the pleas of prescription which it urges, nor immune from attack, for the reason that plaintiff has always remained in possession through himself and his authors. Uninterrupted possession by the tax debtor and continued payment of taxes by him is in continuous conflict with the claim arising under a tax title, and to hold under such circumstances that any prescription operating as a statute of repose runs in favor of the holder of the tax title would amount to a denial of substantial rights, and to a taking of property without due process of Law. Carey v. Cagney, 109 La. 77, 33 South. 89; Gauthreaux v. Theriot, 121 La. 872, 46 South. 892, 126 Am. St. Rep. 328.

There is still another reason why the prescription under article 233 of the Constitution of 1898 cannot operate in favor of defendant. It appears from a certificate issued by the state tax collector, under date of February 5, 1902, that the taxes of 1888, assessed upon the whole tract purchased by plaintiff, and upon prior nonpayment of which defendant's title rests, were paid on May 7, 1889, while the adjudication to the state under which defendant claims was made by the tax collector on May 27, 1889, the deed passed on June 10th, and recorded on June 11, 1889. It also appears from another certificate of the tax collector, of date July 2, 1907, that the taxes of 1888, based on an assessment of only that part of the tract claimed by defendant, were unpaid, and that the tax collector sold the portion so assessed, in satisfaction of that tax. The only logical deduction that can be drawn from these two certificates is that there was a dual assessment, that the rear part of the tract of land was included in an assessment of the whole tract as described in the first certificate, and

that there was, according to the description in the second certificate, another and separate assessment of the rear part of the tract lying back of Florida Walk. So that the land claimed by defendant was assessed first as part of the whole tract and again as a separate and distinct body of land. There was therefore both a dual assessment of the property claimed by defendant and a prior payment of taxes thereon, which, by the terms of article 233, strike the tax collector's sale of May 27, 1889, with nullity. There is then no necessity of discussing the other grounds of nullity alleged by plaintiff, and which also appear to be sustained by the evidence in the case and by the law.

For these reasons the judgment appealed from is avoided and reversed, and it is ordered that the sale by the auditor of public accounts of this state to defendant, the State Realty Company, Limited, of date March 22, 1907, be declared null and void, and the registry thereof in the conveyance' office of the parish of Orleans be canceled as void and of no effect; defendant and appellee to pay all costs.

Rehearing denied by Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.