176 So. 397

**Succession of BONNETTE.**

No. 34345.

June 21, 1937.

Rehearing Denied July 8, 1937.
Further Rehearing Denied Oct. 5, 1937.

John R. Hunter, of Alexandria, for appellant.

K. Hundley, of Alexandria, and Truett L. Scarborough, of Ruston, for appellees.

FOURNET, Justice.

Mrs. Vivian B. Rust, in her capacity as administratrix of the succession of her father, Dr. James V. Bonnette, deceased, filed a final account of her administration and listed herself thereon as a creditor of the succession in the sum of $10,000—"being the amount inherited by her from her mother and representing the community interest of her mother with the said Dr. J. V. Bonnette, all of said property having been used by the said Dr. Bonnette without payment or accounting to claimant."

The cotutors of the minor children of the decedent opposed this claim and pleaded: (1) That the claim as scheduled does not disclose a cause of action; (2) prescrip-

tion of ten, twenty, and thirty years; (3) estoppel; (4) settlement and payment in full; and (5) that the value of the property acquired during the marriage of claimant's mother to the decedent did not exceed the debts of the community.

Upon the trial of the opposition, the lower court rendered judgment in favor of the claimant and against the succession for the sum of $160. Claimant appealed from this judgment, and the opponents answered the appeal asking that the judgment of the lower court be reversed and annulled and that their pleas of no cause of action, prescription, and estoppel be sustained and appellant's claim rejected at her cost.

In order to properly understand the issues in this case, it is necessary to give the facts which are substantially as follows.

The decedent, Dr. James V. Bonnette, was married three times, the first time on the 23d day of June, 1894, to Miss Lucille Irene Thrasher, who died on January 21, 1897. One child was born of this union, the claimant, Mrs. Vivian B. Rust, who, at the date of her mother's death, was an infant about eleven months old. The second time he was married on November 7, 1907, to Mrs. Helen Bonnette, but the record does not show when his second wife died. There was one child born of that union, J. Saunders Bonnette. After the death of the second wife, he married a third time and then to Mrs. Gladys A. Bonnette who survived him. Three children were born of this union, viz., Allen Randolph Bonnette, Lolla Ruth Bonnette, and James V. Bonnette, Jr., minors, who are the opponents here.

The decedent died on January 25, 1933, intestate, and, upon the application of his surviving widow, she was appointed and qualified as administratrix of his estate. Prior to the conclusion of her administration, Mrs. Bonnette died on July 15, 1933; whereupon Mrs. Vivian B. Rust, claimant-appellant here, applied on July 19, 1933, to be appointed as administratrix of the succession and was appointed on May 4, 1934. She filed two provisional accounts after her appointment, and, on April 20, 1935, filed a final account on which she placed herself as a creditor in the sum of $10,000, which she claims is due her by her late father for her mother's interest in the property acquired during the time of her marriage to the decedent.

It appears that on December 5, 1914, the claimant, who was then a minor emancipated by her marriage to Emmet R. Solomon, instituted suit against her father for an accounting of all the property owned by the community of acquets and gains which existed between her mother and father and for a settlement of her mother's interest therein. In that suit she alleged that the community acquired considerable property, consisting of lands, improved and unimproved, livestock, cash, notes, accounts, and other evidence of debt valued by her at the sum of $25,000; that her father never opened her mother's succession and an inventory was never made of the property; that he did not qualify as her tutor; that he was not entitled to the usufruct of the property after his remarriage on the 7th of November, 1907, but, notwithstanding that fact, he continued to collect rents and enjoy the usufruct of the property belong-

ing to the community; and that he sold, mortgaged, and otherwise disposed of the community property. She also listed in detail in that suit the real estate which the record showed was acquired during the community. Her father filed answer in the suit, admitting that his first wife's succession was never opened; that his daughter (claimant) was entitled to an accounting of her mother's share of the community property, but averred that at the time of the death of her mother the estate consisted of a few head of livestock, and some unimproved property, and was worth less than the sum of $2,000; that the property yielded no revenue; that from time to time he had paid claimant various amounts aggregating $5,000; and that he was entitled to be credited with said amount and have the same charged against his daughter's interest in the succession of her mother. This suit was never tried or otherwise disposed of.

Whatever property was acquired by the decedent during his marriage to claimant's mother, that is, between June 27, 1894, and January 21, 1897, belonged to the community of acquets and gains, and on the death of claimant's mother her interest therein vested in claimant, being her mother's sole heir, subject to her father's usufruct thereof until his remarriage on November 7, 1907, and from that date claimant was entitled to her share of the fruits and revenues of the property. When she became emancipated by marriage, she was entitled to an accounting from her father for the rents and revenues of the property after his remarriage and for one-half interest

of the community property which he converted to his own use and benefit.

On the trial of the case claimant filed and introduced in evidence certain documentary proof showing that the aggregate purchase price of the real estate acquired during the community was $320, and sought to prove by parol testimony that certain improvements were made during the existence of the community—some on property acquired by the decedent prior to his first marriage, and some on property acquired during his first marriage—and also to establish the fact that the community owned a drugstore, livestock, and other movables and to fix the values thereof. Opponents objected to the testimony on the ground that, under the provisions of section 1 of Act No. 11 of 1926, parol evidence is incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought more than twelve months after the death of the deceased. The objection was overruled by the district judge, and the testimony was admitted on the ground that the evidence was not to establish a debt due by the succession but to fix the value of certain property rights in the community estate formerly existing between claimant's mother and father of which her father had full possession and control and had never accounted to her therefor.

The purpose of the testimony was not to establish a claim against the estate of the deceased but rather to establish the value of property received and not accounted for,

and consequently Act No. 11 of 1926 does not apply.

But counsel for opponents contend that their pleas of no cause of action, prescription, and estoppel should have been sustained and the claim rejected.

■ The basis of the exception of no cause of action is that the claimant failed to set forth any facts sufficient to warrant proof of her claim and opponents cite in support of their contention several cases, a review of which shows that they are not apposite to the issues involved here as they apply to ordinary suits and not to oppositions.

Chapter 2, § 1, entitled "Mode of Proceedings in Probate Courts," paragraph 6 (article 997 et seq.), of the Code of Practice, treats of accounts to be rendered by administrators of estates, and other persons, but the Code does not provide for any particular way in which items listed in accounts must be set forth. Article 1004 of the Code of Practice provides:

"If the curator or executor obeys the order and renders his account, the heirs or other claimants shall, within three days afterwards, file their written objections, if they have any, signed by themselves or their counsel, to each item of the account to which they object, or of which they pray for the rejection."

We are of the opinion that the item listed for the sum of $10,000 could have been more specific and clearer, and on a motion for particulars Mrs. Rust could have been

required to state her claim with more particularity and in detail. We do not think the rejection of the item objected to on the final account of the administratrix is warranted under the circumstances.

We shall next take up the pleas of prescription.

■ The action of the minor against his tutor "respecting the acts of the tutorship" is prescribed by four years, to begin from the day of his majority. Article 362, Rev. Civ.Code. This is not so when one receives the funds or property of a minor without having been appointed or qualified as tutor, and the minor's claim to recover the funds or property thus received is subject to the prescription of ten years from the date of majority of the minor (Succession of Richmond, 35 La.Ann. 858), or, when the minor has been emancipated, from the date of emancipation (Proctor v. Hebert, 36 La. Ann. 250).

■ However, claimant in this case did, upon her emancipation by marriage, make demand for an accounting and settlement from her father in her suit filed on December 5, 1914, but the claimant, having allowed five years to elapse without taking any steps in the prosecution thereof, is considered as having abandoned the same, and it therefore did not interrupt the prescription. Article 3519, Rev.Civ.Code, as amended by Act No. 107 of 1898; Lockhart v. Lockhart, 113 La. 872, 37 So. 860; Teutonia Loan & Building Co. v. Connolly, 133 La. 401, 63 So. 63; Verrett et al. v. Savoie, 174 La. 844, 141 So. 854.

We are therefore of the opinion that such rights as the claimant may have had against her father for an accounting of her interest in her mother's succession, received by her father and converted to his own use, are prescribed by the lapse of ten years.

This prescription, however, does not apply to claimant's right as sole heir of her mother to recover the undivided half interest in the real property acquired during the existence of the community which existed between her mother and father; such rights could be defeated only by prescription acquirendi causa.

While the record shows that in the act of exchange dated April 26, 1899, James V. Bonnette, deceased, declared that he did "* * * grant, bargain, sell and * * * quit claim * * *" to Mrs. Kate D. Saunders all of his rights, titles, and interests in and to the real estate acquired during the community, this act of exchange is not a title translative of property upon which to base a plea of prescription of ten years under the provisions of article 3478 of the Revised Civil Code. Moreover, we find that the evidence in the record tends to show that, even though the decedent executed the act purporting to transfer the property to Mrs. Saunders, he continued in the possession thereof until a general conflagration, which destroyed practically the whole town of Pollock, including some, if not all, of the improvements on the property, about the year 1915 or 1917. We do not have at issue here the title to the real estate and cannot therefore adjudicate thereon.

Counsel for opponents did not apprise us, either in their pleadings or their argument, of the basis of the plea of prescription of twenty years, and we know of no such prescription applicable to the case at bar.

The basis of the plea of prescription of thirty years is that claimant permitted more than thirty years to elapse since the death of her mother before urging her claim. It is unnecessary to discuss this plea; suffice it to say that prescription did not begin to run against claimant until she was emancipated by her marriage to Emmet R. Solomon, and consequently the plea is without merit.

For the reasons assigned, the judgment of the lower court is annulled and set aside, and the plea of prescription is sustained and the claim of Mrs. Vivian B. Rust is dismissed, reserving to her such rights as she may have to the real estate acquired during the community of acquets and gains which existed between her mother and father; all costs with reference to this opposition to be borne by the succession.

ROGERS, absent.

On Application for Rehearing.

PER CURIAM.

Mrs. Vivian B. Rust died after her application for a rehearing, but before the rehearing was denied. The court was not aware of the death of Mrs. Rust when

the order was entered refusing a rehearing. Thereafter Mrs. Helen Stricklen, sole surviving heir of Mrs. Rust, filed a petition in which she informed the court of the death of Mrs. Rust, and asked to have the order refusing a rehearing set aside' and to have the case remanded, or, in the alternative, to have the case reinstated on the docket of this court in order that she might present her reasons for asking for a rehearing. The order refusing a rehearing is null, because at the time the order was rendered there was no succession representative before the court, representing the succession of Mrs. Rust, against whom the decree was rendered. Louisiana Mutual Insurance Company v. Costa, 32 La.Ann. 1; Cambon Bros. v. Suthon, 148 La. 669, 87 So. 512. There is no reason, however, why the case should be remanded. The proceedings were valid up to and including the decree originally rendered by this court. The only proceeding that is invalid is the refusal of a rehearing. Now that Mrs. Rust's heir and legal representative is before the court, the petition for a rehearing may be acted upon legally. We see no reason for allowing further time for the succession representative to supplement the petition for a rehearing.

It is ordered that Mrs. Helen Stricklen be and she is hereby substituted for Mrs. Vivian B. Rust, deceased, as the party applying for a rehearing.

The order refusing a rehearing rendered on July 8, 1937, being invalid, the order is hereby set aside and the application for the rehearing is now again denied.