491 So.2d 1368 (1986)
CONCORDIA PARISH SCHOOL BOARD, Plaintiff-Appellee,
v.
J.A. RUSS, d/b/a J.A. Russ Construction Company, Inc., Defendant-Appellant.
No. 85-660.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
Rehearing Denied August 13, 1986.
*1370 Daniel W. Richey, Vidalia, for defendant-appellant.
Jack H. McLemore, Jr., Vidalia, for plaintiff-appellee.
Before STOKER, KING and COX,[*] JJ.
STOKER, Judge.
This suit concerns a demand for payment of a sales-use tax. Four local governmental units allege that Russ Construction Company, Inc. owes them sales-use tax on construction materials used in projects located within each of their respective jurisdictions.[1] Concordia Parish School Board (School Board), Concordia Parish Police Jury (Police Jury), City of Vidalia (Vidalia), and City of Ferriday (Ferriday) are the local governing bodies which claim the sales-use tax is owed.
The trial court held that the taxes sought to be collected are owed. The taxpayer resists payment of the tax and appeals the trial court judgment. We remand the case for reconsideration in light of principles we discuss which were neither argued by counsel nor considered by the trial court.
Russ Construction Company, Inc. (Russ Co.) is a Mississippi corporation which has been engaged in general contracting in Louisiana for over thirty years. The controversy over the sales-use tax concerns four specific projects in Louisiana: Concordia Bank Building in Vidalia, Concordia Bank Building in Ferriday, Concordia Parish Airport and Alcoa Plant in Vidalia. In April 1984, the Concordia Parish Tax Director, representing the School Board, Police Jury, Vidalia, Ferriday, and others not pertinent to this case, audited Russ Co.'s books on these projects. As a result of the audit, the local governmental units demanded that Russ Co. pay the appropriate sales-use taxes which they concluded Russ Co. owed. A demand letter was sent to Russ Co. in June 1984. The four governmental units brought suit by summary process on June 26, 1984. Various exceptions were filed and on October 9, 1984 the four suits were consolidated for trial.
The trial judge held that Russ Co. was a "dealer" as defined by the respective ordinances, had not paid the tax to the respective taxing authorities, and therefore owed the taxes demanded plus penalties on a portion of the taxes due and attorney's fees.

FACTS
In the course of fulfilling four construction projects in Concordia Parish, Russ Co. obtained building materials from outside the parish. Many, but not all, of the suppliers were located in Mississippi. The local taxing authorities claim that they did not receive the appropriate sales-use tax on any of the materials purchased.
*1371 The respective ordinances under which the taxing authorities claim the sales-use taxes are, for all practical purposes, identical. Therefore, when we refer to "the ordinance" the reference is to any and all of the ordinances at issue. (All numerical references will be to the School Board ordinance.) The School Board levies a 1% sales-use tax throughout the parish. The Police Jury levies a 1% sales-use tax in all areas of Concordia Parish outside Vidalia and Ferriday. Vidalia and Ferriday each levy a 1% sales-use tax in their respective cities. The result of this taxing arrangement is that a taxpayer owes 2% local sales-use tax.
The plaintiff taxing authorities submitted into evidence the invoices of supplies bought by Russ Co. for the projects in question. These invoices can be divided into four categories based upon tax information reflected (or not reflected) on the invoices.

Category 1
Category 1 includes all invoices on which there is no indication that a tax was charged.

Category 2
Category 2 includes all invoices which indicate that a 3% sales tax was charged. (Some of these indicate that the 3% sales tax was Louisiana state sales tax. Three percent was the prevailing state sales-use tax rate at that time.)

Category 3
Category 3 includes all invoices which indicate that at least a 5% sales tax was charged.

Category 4
The fourth category includes all invoices which show less than 5% sales tax charged.
The plaintiff taxing authorities contend that they received no taxes on any of the invoiced purchases. They further contend that Russ Co. fits the definition of "dealer" under the ordinance and is therefore responsible for remitting all sales taxes directly to the plaintiffs. They also claim that Russ Co. should receive no credit on local use taxes for any sales taxes paid to suppliers outside of Concordia Parish.
Defendant Russ Co. claims that it paid all taxes to the sellers. It argues that sellers, not buyers, are responsible for remitting all taxes to the taxing authorities. It claims penalties, interest, attorney's fees, and costs were improperly assessed (1) because there is no statute assessing these to a purchaseruserconsumer or (2) because the defendant acted in good faith. In addition, Russ Co. believes that it should receive credit on local use taxes for any sales taxes paid to suppliers outside of Concordia Parish. Russ Co. also argues that plaintiffs should be estopped from collecting the taxes because in the thirty years that defendant had done business in Louisiana, plaintiffs had never demanded payment of any taxes. Finally, defendant claims the trial court allowed the summary proceeding to be prolonged for eleven months in contravention of the time limitations provided by LSA-R.S. 47:1574(1), (2), and (3). Therefore, the court was without authority to render the judgment.

DISCUSSION OF LAW

I.
The trial court based its decision on a finding that Russ Co. is a "dealer" and that a "dealer" must collect and remit sales-use tax to the taxing authority. We do not conclude that the issues in this case may be disposed of on the simple basis of classification of the defendant as a "dealer." Moreover, we are not convinced that such a classification may be made with precision or technical accuracy. We do not regard classification in this regard as the key to the case as it appears to have been so concluded by the trial court.
The definition of "dealer" in the ordinance is so broad that it lacks specific meaning when taken out of the context of the taxable transaction in question. It is necessary to look at the entire ordinance to perceive its overall purpose and intent. McNamara v. U.O.P., Inc., 389 So.2d 741 (La.App. 2d Cir.1980), writ denied, 396 So.2d 898 (La.1980).
*1372 The ordinance defines "Dealer" as follows:
"SECTION 1.05. `Dealer' shall include every person who:
"(1) manufactures or produces tangible personal property from any State, or other political subdivision of this State, or foreign country, for sale at retail, for use or consumption, or distribution, or storage to be used or consumed in this Parish;
"(2) imports, or causes to be imported, tangible personal property from any State, or other political subdivision of this State, or foreign country, for sale at retail, for use or consumption, or distribution, or storage to be used or consumed in this Parish;
"(3) sells at retail, or who offers to sell at retail, or who has in his possession for sale at retail, or for use, or consumption, or distribution, or storage to be used or consumed in this Parish, tangible personal property;
"(4) has sold at retail or used, or consumed, or distributed or stored for use or consumption in this Parish, tangible personal property and who cannot prove that the tax levied by this ordinance has been paid on the sale at retail, the use, the consumption, the distribution, or the storage of said tangible personal property;
"(5) leases or rents tangible personal property for a consideration, permitting the use or possession of such property without transferring title thereto;
"(6) is the lessee or rentee of tangible personal property and who pays to the owner of such property a consideration for the use or possession of such property without acquiring title thereto;
"(7) sells or furnishes any of the services subject to the tax under this ordinance or purchases or receives any of the services subject to tax under this ordinance; or
"(8) is engaging in business in the Parish."
The thrust of the ordinance (indeed as is the case of sales-use taxes generally in this State) is that purchasers or users pay a sales-use tax on sales at retail on all tangible personal property bought or used within the taxing authority's jurisdiction. McNamara v. Oilfield Const. Co., Inc., 417 So.2d 1311 (La.App. 3d Cir.1982), writs denied, 422 So.2d 157 (La.1982). While the ordinance clearly envisions that purchasers pay the tax to the seller who is responsible for remitting the tax to the proper authority, a purchaser is liable for the tax if the seller does not collect or make remittance. The Concordia Parish School Board ordinance provides that the tax may be collected from purchasers under such circumstances.
Section 4.01 of the ordinance provides:
"SECTION 4.01: The tax levied by this ordinance shall be collected by the dealer from the purchaser or consumer.... The dealer shall have the same right in respect to collecting the tax from the purchaser or in respect to nonpayment of the tax by the purchaser, as if the tax were part of the purchase price of the property...." (Emphasis added)
Section 4.04 provides:
"Where the purchaser has failed to pay and a dealer has failed to collect a tax upon a sale, as imposed by this ordinance, then in addition to all other rights, obligations and remedies provided, such tax shall be payable by the purchaser directly to the Governing Body, and it shall be the duty of this purchaser to file a return then with the Collector and to pay the tax imposed thereon to the Governing Body within fifteen (15) days after such sale was made or rendered." (Emphasis added)
The contractor or builder of an immovable has been found to be the ultimate consumer of the building materials that go into constructing the immovable. Claiborne Sales Company v. Collector of Revenue, 233 La. 1061, 99 So.2d 345 (1957). Since tangible personal property has been judicially defined as movable property, the sale to the owner of the immovable is not taxable. American Sign & Ind. Corp. v. City of Lake Charles, 320 So.2d 234 (La. App. 3d Cir.1975). Therefore, the contractor *1373 is the purchaser and consumer of the building materials used in construction and owes a tax on the purchases. St. John the Baptist P.S.B. v. Marbury-Pattillo C. Co., 259 La. 1133, 254 So.2d 607 (1971).
The cases which are cited by plaintiffs to support a finding that a contractor is a "dealer" are not on point. The parties and their relationships in those cases are different from those in the present case.

II.
We note one well recognized exception or qualification to the requirement that taxpayers pay use taxes. We refer to those instances in which a contractor purchases goods in another jurisdiction and the seller delivers the goods to the contractor at the place of purchase. In such instances the seller should collect any sales taxes due at the place of purchase. If the contractor subsequently moves the goods to a different jurisdiction, the contractor would then owe a use tax in the new jurisdiction. However, there would be no tax in the new jurisdiction if (1) the tax paid in the foreign jurisdiction was a similar tax to that of the new jurisdiction on the same tangible personal property and (2) the foreign jurisdiction granted a similar credit for property which was purchased and later brought into the new jurisdiction.
See Section 5.03 of the Concordia Parish School Board ordinance. Although the provision for credit against use taxes exists, there is a presumption that all movables located in the parish held by the contractor are subject to the tax. Language similar to that contained in Section 9.01 of the School Board ordinance was construed in St. John the Baptist P.S.B. v. Marbury-Pattillo C. Co., supra. There the Supreme Court held the burden in such cases is clearly upon the contractor to show that any movables in its possession are not subject to the tax.

III.
For final consideration is the situation in which a tax has been collected illegally. No credit can be granted for a tax which has been paid but was illegally charged if the taxing occurred before January 1, 1984. Vermilion Parish Sch. Bd. v. Weaver Explor., 474 So.2d 1032 (La.App. 3d Cir.1985), writ denied, 477 So.2d 1126 (La.1985.) LSA-R.S. 33:2718.2 which became effective on January 1,1984 provides:
"§ 2718.2. Credit for monies paid
A. A credit against the sales and use tax imposed by any political subdivision of the state shall be granted to a taxpayer who paid monies, whether or not paid in error absent bad faith, based upon a similar tax, levy, or assessment upon the same tangible personal property in a political subdivision of another state, or a political subdivision of this state.
B. The credit provided herein for monies paid to a political subdivision of another state shall be granted only in the case where the political subdivision of another state to which monies have been paid grants a similar credit. The credits granted by this provision shall not exceed the amount of money paid to a political subdivision of another state, or political subdivisions of this state.
C. The proof of payment to a political subdivision of another state, or a political subdivision of this state shall be made in accordance with the rules adopted by the secretary of the Department of Revenue and Taxation under R.S. 47:303(A). In no event shall the credit be greater than the tax imposed by the political subdivision upon the particular tangible personal property that is the subject of the sales and use tax."
All purchases in the case before us occurred before the effective date of the above provision; therefore, Vermilion Parish Sch. Bd. v. Weaver Explor., supra, is controlling.
As between parishes within the states, LSA-R.S. 33:2716 places limitations on the ability of a taxing authority to charge taxes outside its jurisdiction. It provides:
"§ 2716. Prohibition on levy or collection of sales tax on goods, property or services delivered or performed outside territorial limits.
No parish or municipality shall levy or collect any sales tax on the sale of any *1374 goods or personal tangible property delivered or services performed outside the territorial limits of the taxing parish or municipality.
This provision shall apply to every parish and municipality in the state of Louisiana, whether levying and collecting such tax under authority of general or special laws of the state or under powers granted in their charters or under any other authority or grant of the power to levy and collect sales or other taxes. No provision in this Section shall be construed as infringing upon or limiting in any manner the right of parishes and municipalities to levy and collect any use tax heretofore or hereafter authorized."

IV.
In his Reasons for Judgment, the trial judge held:
"The record in these cases indicate that the alleged liabilities are for use taxes applicable to materials purchased by Defendant and its subcontractors from Mississippi suppliers, and on which no Louisiana sales or use tax was paid. After purchase these materials were brought into Louisiana by either the Defendant or its subcontractors and were used on the four projects."
We disagree that the record reflects that the purchases were confined to Mississippi. The invoices show that purchases involve suppliers in Monroe, Louisiana; Baton Rouge, Louisiana, and Virginia, and other foreign jurisdictions, as well as many Mississippi suppliers. We also disagree that the record reflects that "[a]fter purchase these materials were brought into Louisiana by either the Defendant or its subcontractors."
Many of the invoices clearly indicate that the seller shipped the goods to the job sites in Louisiana. Many invoices even indicate the particular job for which the materials were purchased.
We believe Section 4.02 is applicable:
"Section 4.02. Every dealer located outside the Parish making sales of tangible personal property for distribution, storage, use, or other consumption, in the Parish shall, at the time of making sales, collect the tax imposed by this ordinance from the purchaser."

V.
Each category of invoices, as previously defined, has characteristics which require individual treatment.

Category 1
Category 1 includes invoices which do not indicate that any tax was charged or paid. Section 4.07 provides:
"SECTION 4.07. A person engaged in any business taxable under this ordinance shall not advertise or hold out to the public, in any manner, directly or indirectly, that he will absorb all or any part of the tax, or that he will relieve the purchaser from the payment of all or any part of the tax. The dealer shall state and collect the tax separately from the price paid by the purchaser, but his failure to do so shall not be available as a defense to the purchase in any proceedings brought under this ordinance."
In McNamara v. Oilfield Const. Co., Inc., supra, this court applied an identical state statute. LSA-R.S. 47:304(F), (G). The court held:
"It appears from even a cursory reading of these Articles that if a tax is collected by the dealer it must be stated separately (on the sales receipt) from the price paid by the purchaser. The dealer is not allowed to `absorb' any of the taxes himself."
The court held further that if the taxing authority introduces receipts that do not indicate a separate tax, it has presented prima facie proof that the taxes due on such sales were not paid. The court explained that the defendant taxpayer could present evidence to controvert the prima facie showing. But as is the case with Russ Co., the defendant taxpayer did not rebut the prima facie showing.
Therefore, we find that in transactions falling in Category 1 Russ Co. owes the appropriate tax, plus any penalties on *1375 all invoices on which there is no tax separately indicated.

Category 2
Category 2 includes invoices upon which 3% tax was charged. Three percent was the prevailing tax rate for the State of Louisiana at the time in question. Some invoices indicate a charge of a 3% Louisiana sales tax and some only indicate a charge of a 3% sales tax. We feel it is reasonable to find that all charges of a 3% sales tax were State sales taxes. Therefore, these invoices can be treated exactly like Category 1 invoices, since there is no indication that any local sales-use tax was charged.
We find that Russ Co. owes the appropriate tax and penalties on all invoices on which only state tax was charged.

Category 3
Category 3 includes all invoices on which at least 5% sales tax was charged. With the exception of only a few of these invoices, there is no indication of which state's tax has been charged. The law provides that foreign dealers must collect local sales-use taxes. Absent indication to the contrary, we believe that buyers have a right to believe that seller-dealers comply with this law. It follows that a purchaser can assume that the tax he pays on materials purchased for use in Louisiana are in fact Louisiana taxes.
Therefore, in this litigation all purchases which were made outside of Concordia Parish but were delivered at the job site can be presumed to reflect a Louisiana tax charge. The 5% charge indicated would cover the 3% state tax and the 2% local tax. Russ Co. would owe no tax in this instance since it paid the appropriate 2% local tax to the vendor. A like conclusion can be reached if the invoice indicates the materials were to be used for a particular job in Louisiana. Some of the invoices are not clear, and there is conflict between the taxpayer's position and the tax audit concerning the place of delivery. Because we feel we must remand for other reasons, we think it would be appropriate to allow further argument on this point.
If the materials were purchased in Mississippi and delivered to Russ Co. in Mississippi with no particular job indicated, there can be no such presumption. If the purchases were made outside of Concordia Parish and a foreign tax was legally charged, Russ Co. would owe a sales-use tax on materials it brought into the Concordia Parish jurisdiction.
However, credit for sales-use taxes invoiced and paid on Mississippi sales should be given because the trial judge found a like tax in Mississippi and a similar credit. It is not necessary that Russ Co. prove that it paid the Mississippi tax directly to the taxing authority. Proof of payment of the invoices which separately listed a tax is sufficient. There is no evidence in the record for similar tax credit in any jurisdiction other than Mississippi. Therefore, invoices which emanated from jurisdictions other than Mississippi do not trigger a credit for Russ Co. Russ Co. has simply not carried its burden of proof.
This category also includes invoices which show a 6% tax charge. The same inquiries applicable to the 5% tax charge are applicable to the 6% charge. If the sale was for delivery or use in Louisiana, the 1% extra charge should be credited to the local tax debt. At least one invoice shows that the extra 1% was charged for Concordia Parish.
If the sale was a Mississippi sale, no credit can be given for the extra 1%. Credit can only be given for a tax equal to or less than that charged in Louisiana.

Category 4
The fourth category includes all invoices which show that 1/8th of 1% has been charged as tax. All of these invoices were issued by Mississippi suppliers, or at least suppliers that have offices in Mississippi. If the taxes were legally charged, a credit should be given to Russ Co. for sales-use tax owed in Louisiana.

ESTOPPEL
Russ Co. argues the taxing authority should be estopped from collecting the *1376 taxes. This argument is without merit. The Louisiana Supreme Court has addressed this issue in State v. J. Watts Kearny & Sons, 181 La. 554, 160 So. 77 (1934) and subsequently in Claiborne Sales Company v. Collector of Revenue, supra. The court held the state cannot be estopped from collecting the tax in spite of advice to the contrary by its agent.

PENALTIES, INTEREST AND ATTORNEY'S FEES
Russ Co. argues that the ordinance does not impose a penalty on purchasers, users or consumers for overdue taxes. Russ Co. contends that the penalty provisions of the ordinances relates only to "a seller." Sections 9.01 and 9.02 of the ordinances provide:
"SECTION 9.01. For the purpose of the enforcement of this ordinance, and the collection of the tax levied hereunder, it is presumed that all tangible personal property, subject to the provisions of this ordinance, imported into the Parish or held in the Parish by any dealer is to be sold at retail, used or consumed, or stored for use or consumption in the Parish, and is subject to the tax herein levied; provided that such presumption shall be prima facie only, and subject to proof furnished to the Collector."
"SECTION 9.02. Failure to pay any tax due as provided in this ordinance, shall ipso facto, without demand or putting in default, cause said tax, interest, penalties, and costs to become immediately delinquent, and the Governing Body is hereby vested with authority, on motion in a court of competent jurisdiction, to take a rule on the said dealer, to show cause in not less than two (2) or more than ten (10) days, exclusive of holidays, after the service thereof, which may be tried out of term and in chambers, and shall always be tried by preference, why said dealer should not be ordered to cease from further pursuit of business as a dealer, and in case said rule is made absolute, the order thereon rendered shall be considered a judgment in favor of the Governing Body, prohibiting such dealer from the further pursuit of said business until such time as he has paid the said delinquent tax, interest, penalties, and costs, and every violation of the injunction shall be considered as a contempt of court, and punished according to law."
As previously discussed, the definition of "dealer" is over inclusive and misleading. Defining and designating a "dealer" is not at all helpful. While the definition may include almost anyone, the rest of the ordinance clearly appears to discuss "dealer" in terms of the seller, as opposed to the buyer.
Plaintiffs point out that according to the ordinance at Section 9.03, "dealer" must pay penalties as follows:
"SECTION 9.03. If the amount of tax due by the dealer is not paid on or before the twentieth (20th) day of the month next following the month for which the tax is due, there shall be collected, with said tax, interest upon said unpaid amount, at the rate of six per cent (6%) per annum, or fractional part thereof, to be computed from the first day of the month next following the month for which the tax is due until it is paid; and in addition to the interest that may be so due there shall also be collected a penalty equivalent to five per cent (5%) for each thirty (30) days, or fraction thereof, of delinquency, not to exceed twenty-five per cent (25%) in aggregate, of the tax due, when such tax is not paid, within thirty (30) days of the date the tax first becomes due and payable, and in the event of suit, attorneys' fees at the rate of ten per cent (10%) of the aggregate of tax, interest and penalty."
Following our previously stated conclusions, we believe we must look at the intent of the ordinance to determine its meaning. We conclude that the intent of the School Board (and the other plaintiff political bodies with respect to their ordinances) was to charge a penalty to anyone who owes a tax directly to the taxing authority. In most cases this is the seller. But if the seller does not collect the tax and the purchaser has not paid the tax, then, as *1377 we have previously pointed out, it becomes the responsibility of the purchaser to report and pay the tax directly to the taxing authority. Similarly, when a person brings a previously bought item into the taxing jurisdiction, he owes a use tax directly to the taxing authority. (He may or may not be granted a credit.)
When the purchaser or user owes the tax directly to the taxing authority, and he does not pay, the penalty section of the ordinance is applicable. We believe that in all instances in which it is found that Russ Co. should have reported and remitted a tax to the proper authorities, it also owes the appropriate penalties, interest and attorney's fees.
As an alternative argument Russ Co. urges that it acted in good faith in not paying the taxes in question and that it even offered to pay the taxes which it admits it owes to avoid this litigation. Relying on Collector of Revenue v. J.L. Richardson Company, 247 So.2d 151 (La.App. 4th Cir.1971), writ refused, 258 La. 915, 248 So.2d 586 (1971), Russ Co. contends that it should not be required to pay penalties, interest or attorney's fees. In the J.L. Richardson case no penalties were assessed against the taxpayer in a contest over taxes owed to the State of Louisiana. The taxpayer was not required to pay penalties because the trial court found that the failure of the taxpayer to file tax returns was done in good faith. The trial court found, and the Court of Appeal apparently approved of the finding, that the taxpayer did not file returns under the belief that it had a legal right not to file such returns, and the failure to file them was not done with any intention of avoiding taxes due.
Here the issue between Russ Co. and the taxing agencies is not over the question of failure to file returns but rather the failure to pay taxes due. Unless some analogy could be made between intentional failure to pay and failure to file returns, we do not regard the J.L. Richardson case as direct authority for the good faith argument urged by Russ Co. Inasmuch as we will remand this case to the trial court, we will leave this question open for argument and consideration in the trial court. We will note that it may well be that the taxing ordinance leaves no discretion regarding the application of penalties.[2] Cf. St. John the Baptist P.S.B. v. Marbury-Pattillo C. Co., supra, 254 So.2d at page 611.

SUMMARY PROCESS
Defendant's argument that the court is without authority to render a judgment because a summary proceeding was prolonged for eleven months is without merit. Collector of Revenue v. Rundell, 72 So.2d 749 (La.App. 2d Cir.1953).

COURT COSTS
LSA-C.C.P. art. 2164 gives this Court the authority to tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable. In view of our decision to remand this case for the reasons given above, we feel it is appropriate to reallocate the court costs to the extent legally permissible. LSA-R.S. 13:4521 and 13:5112.

GENERAL CONCLUSIONS
We are of the opinion that the conscientious trial court incorrectly based its decision that all the taxes sought were owed solely on the basis of classifying defendant as a "dealer." On the basis of our discussion set forth above, we view this classification approach as improper and insusceptible of application to the different categories of situations which the evidence appears to present. Nevertheless, we do not find the record sufficiently complete that we may decide all factual questions at this level under Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
*1378 Under the circumstances, we conclude that this case should be remanded to the trial court for a reopening of the case for consideration of each individual transaction consistent with the views expressed herein. This remand will be fairer to the litigants and permit both sides to present any additional evidence available in support of their respective positions and for consideration of the court.

DISPOSITION
For the reasons given above the judgment of the trial court is reversed and set aside. This case is remanded to the trial court for retrial and reconsideration in light of and consistent with the views expressed herein. The costs of court, both at the trial level and in this Court of Appeal, are assessed equally to the parties; the assessment of these costs to the plaintiff School Board is limited to those costs which may be legally imposed upon it.
REVERSED AND REMANDED.

ON REHEARING
PER CURIAM.
The Concordia Parish School Board has applied for a rehearing in this case. Also the City of Vidalia, the Town of Ferriday, and the Concordia Parish Police Jury have applied for rehearings in the companion cases in our docket numbers 85-661, 662 and 663. 491 So.2d 1378, 491 So.2d 1379 and 491 So.2d 1379. The applications allege that we made errors in factual findings in our opinion, and the rehearings are sought based on those alleged errors.
The applications for rehearing are denied.
In our opinion in appeal number 85-660 it was not our intention to make any specific findings of fact. The cases were remanded for a new trial on the basis of general principles we discussed. It was our intention that the retrial be conducted with specific consideration being given to each invoice involved in these cases. If clarification is required, we now state that upon retrial the trial court shall make such fact findings as shall appear to the trial court to be supported by the evidence. In this manner, liability for taxes shall be determined on an invoice-by-invoice basis. If our opinion from which rehearings are sought gives the impression that we made specific findings of fact, we disavow any such intention. We generalized with reference to various factual situations which we concluded were disclosed by the evidence. If, in the retrial, circumstances we discussed are determined not to exist, the trial court will be free to make such factual determinations.
NOTES
[*] Ronald D. Cox of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] We hand down separate judgments in the three other suits. Those suits are City of Vidalia v. J.A. Russ, d/b/a J.A. Russ Construction Company, Inc., 491 So.2d 1378 (La.App. 3d Cir.1986); City of Ferriday v. J.A. Russ, d/b/a J.A. Russ Construction Company, Inc., 491 So.2d 1379 (La. App. 3d Cir.1986), and Concordia Parish Police Jury v. J.A. Russ, d/b/a J.A. Russ Construction Company, Inc., 491 So.2d 1379 (La.App. 3d Cir. 1986).
[2] The Court was not asked nor does it decide if the enactment of an ordinance imposing penalties for failure to pay taxes as opposed to penalties for failure to file returns exceeds the power of local taxing authorities. Since no returns were filed in this case, the question need not be resolved.